IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re

Kim Marie White,

           Debtor.

In Chapter 13 Proceedings

Case No. 06-03692

MEMORANDUM DECISION

(Opinion to Post)

## I. PRELIMINARY STATEMENT

This matter comes before the Court on a "Motion for Sanctions for Violation of the Automatic Stay"[1] pursuant to 11 U.S.C. § 362(k) ("Motion") filed by Kim White, the Debtor herein, on May 25, 2007. The Debtor alleged that Specialty Motors and Mr. Jack Foshee, its principal, had repossessed two vehicles in which the Debtor had an interest in willful violation of the stay. This Court held an expedited hearing in the matter on May 31, 2007, at which the Debtor's counsel, the only party appearing,[2] reported that the stay violation had ceased in that the vehicles had been returned to the Debtor. However, the Debtor's counsel requested a continuance of the hearing to determine what damages should be assessed against Specialty Motors for a willful violation of the stay. The Court continued the matter to June 14, 2007, at which time evidence was presented on the issue of damages. The Debtor's

---

  **1** Docket Entry No. 32.

  **2** The Debtor's counsel's office attempted, unsuccessfully, to give notice of the May 31 hearing to Jack Foshee and Specialty Motors via fax on May 29. A Notice of Hearing was mailed on May 31. The Notice was also hand-delivered to Specialty Motors on May 31 by the Debtor's son, Aaron White, but Mr. Foshee did not receive the Notice until later that evening, and was unable to attend the initial hearing.

counsel was again present, as was Specialty Motors, and its principal, Mr. Foshee, who alleged that he and his Company did not knowingly violate the automatic stay. At the conclusion of the hearing, the Court took the matter under advisement.

This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2006).

## II. FACTUAL DISCUSSION

The Debtor filed her petition for Chapter 13 relief on November 6, 2006. Although the Debtor is disabled and unable to work, she is eligible for Chapter 13 relief due to her receipt of Social Security and rental payments, the latter form of income being paid by her adult daughter who resides with her.

The Debtor had previously filed a bankruptcy petition which was dismissed in the year preceding the filing of this case. To prevent her automatic stay from terminating in the present case, the Debtor filed a "Motion to Continue Section 362(a) Stay Pursuant to Section 362(c)(3)"[3] on November 8, 2006. The Court held a hearing in the matter on November 21, 2006, at which the Debtor's counsel made an offer of proof that the Debtor had filed this current case in good faith. The Court requested additional documentation in support of the Debtor's request, although no creditor or interested party had objected to the continuation of the stay. Subsequently the Debtor did file some support for the requisite relief.[4] On December 1, 2006, the Court entered an Order continuing the Debtor's stay for sixty days;[5] and another Order was entered on January 25, 2006, continuing the automatic

---

[3] Docket Entry No. 6.

[4] Docket Entry No. 19.

[5] Docket Entry No. 24. The Court had concerns about the initial documentation the Debtor submitted. Although the Debtor's counsel represented at the November 21, 2006 hearing that the Debtor had entered into a settlement agreement with Countrywide and that Countrywide had breached that agreement, requiring the Debtor to file this case, the

2

stay, as to all creditors, until such time as the Debtor's plan was confirmed.[6]  Although the Debtor's plan had not yet been confirmed as of the time of the June 14, 2007 hearing on damages, the Debtor urged the Court to impose compensatory and punitive damages as to Specialty Motors' and/or Mr. Foshee's willful violation of the stay.[7]

However, during the course of the June 14 hearing, it became clear that there was some question as to whether the Debtor had given Specialty Motors or Mr. Foshee, its principal, appropriate notice of the institution or the continuation of the automatic stay. The Debtor had filed her Schedules and Statements on November 17, 2006,[8] and she had listed "Specialty Motors" as a secured creditor on her Schedule D, describing its collateral as a 1996 Dodge Neon and a 1998 Dodge Neon ("the vehicles").[9]  However, the Debtor had not included Specialty Motors or its owner, Jack Foshee, on her Master Mailing List.[10]  As a

---

documentation filed by the Debtor after the hearing did not support counsel's representations. Hence, the Court vacated the bench ruling made at that November 21 hearing, and continued the automatic stay, as to all creditors, for a period of 60 days to allow the Debtor the opportunity to determine how to proceed as to Countrywide and her other creditors.

  **6** Docket Entry No. 29.  This second Order was entered after the Debtor submitted her "Second Motion to Continue the Section 362(a) Stay pursuant to Section 362(c)(3)," Docket Entry No. 25.  The Debtor asserted that she had determined that it was in her best interests to continue in her current bankruptcy proceeding and had resolved certain issues with creditor Countrywide.  Therefore, the Court entered its January 25, 2006 Order continuing the Debtor's automatic stay as to all creditors until such time the Debtor's Plan would be confirmed.

  **7** See Note 5, supra.

  **8** Docket Entry No. 14.

  **9** See Id. at page 8.  The 1998 Dodge Neon is listed as being jointly owned by the Debtor and her daughter, Allison White.  Allison currently has a bankruptcy proceeding pending before Judge Baum, case no. 07-01622.

  **10** For reasons that remain unclear to the Court, the Debtor's Master Mailing List does not appear on the docket as a separate docket entry.  On November 7, 2006, the Court mailed a "Deficiency Notice" to the Debtor and her counsel, alerting them that her Master Mailing List had not been filed.  Thereafter, the Master Mailing List appears on the docket as an exhibit to several certificates of service and other items, mailed by both the Court and the Debtor.  See, e.g., Docket Entry Nos. 10, 13, 18.  However, despite the Court's apparent receipt of the

3

result, although Specialty Motors was listed on her Schedules, it had not received any written notice from the Bankruptcy Court as to the filing of the Debtor's case nor the entry of any of the orders continuing the automatic stay in place. [11]

At one point during the course of the June 14 hearing, the Debtor testified that Mr. Foshee had sent a letter to her,[12] acknowledging that she had a pending bankruptcy proceeding and requesting information as to how she and her daughter wished to proceed as to the two vehicles in which Specialty Motors had an interest. The Debtor asserted that given the oral notice by her of her pending bankruptcy proceeding to Mr. Foshee, as established by his letter to her, Specialty Motors had willfully violated the stay. However, during cross examination, the Debtor conceded that Mr. Foshee's letter had no date at the top and that she had not marked the letter with the date that she had received it from him. She did not have the envelope, or any other evidence, reflecting when she received the letter from Mr. Foshee. Since she had filed this case and one other within the preceding year, she testified that she was uncertain as to when Mr. Foshee had sent the letter to her. She conceded that it could have been received by her during the time period when only her first bankruptcy case was pending. Moreover, Mr. Foshee testified that although he was aware of the Debtor's first bankruptcy case, which had been dismissed, he never received any oral or written notice of the Debtor's current case prior to his repossession of the Debtor's vehicles.. The Court concludes, based upon the evidence presented, that Mr. Foshee credibly testified that Specialty Motors had no oral or written notice of the filing of the Debtor's second bankruptcy petition or the entry of various orders maintaining the automatic stay in place as to all

---

Master Mailing List, it was never entered on the docket as a separate item filed by the Debtor.

**11** Unfortunately, the Debtor's counsel conceded at the time of the June 14 hearing that any notice given to creditors of the continuation of the automatic stay would have utilized the master mailing list retained by the Debtor's counsel in his files. That list did not include the name of Specialty Motors or its principal, Mr. Foshee.

**12** See Exhibit 1.

4

creditors of the Debtor. Thus, Mr. Foshee and Specialty Motors did not have notice of the current bankruptcy proceeding when Specialty Motors repossessed the Debtor's two vehicles.

However, the Debtor presented additional evidence that Specialty Motors was independently notified by the Debtor's counsel of the Debtor's current case after the vehicles were repossessed and that Specialty Motors' failure to return promptly the vehicles to the Debtor constituted an ongoing violation of the stay and, hence, a separate willful violation of the automatic stay. Initially, on Wednesday, May 23, 2007, the Debtor's adult children, Aaron and Allison, drove both of the Debtor's vehicles to their jobs at the local Bashas' store. Both of the vehicles were taken from the Bashas' parking lot that day. The Debtor called the police and was advised that Specialty Motors had filed a Notice of Repossession of the vehicles. As noted previously in this Decision, Specialty Motors did not yet have any notice of the Debtor's current case at the time of the repossession of the vehicles.

The Debtor then immediately contacted her counsel, whose paralegal, Ms. Lisa Paris, telephoned Specialty Motors and spoke with Mr. Foshee later in the day on May 23, 2007. Ms. Paris testified that she advised Mr. Foshee of the Debtor's pending bankruptcy case and requested that he return the vehicles immediately. Mr. Foshee told Ms. Paris that he had received no notice of the Debtor's bankruptcy filing, but agreed to turn on his fax machine to receive proof of the filing. Ms. Paris then faxed an ECF Notice of Bankruptcy Filing[13] to Mr. Foshee, accompanied by the Debtor's Chapter 13 Plan,[14] reflecting that Specialty Motors' claim on the two vehicles was to be paid pursuant to the Debtor's Plan. However, by May 24, Specialty Motors had still not returned the vehicles to the Debtor. Ms. Paris attempted to

---

[13] The Notice was presented at the June 14 hearing as Exhibit 2 and is attached hereto. Ms. Paris testified that this Notice is the standard document used by counsel to notify creditors and others of a debtor's bankruptcy filing. The official seal of the Bankruptcy Court dominates the right side of the Notice. The text at the bottom of the Notice explains that the filing of a bankruptcy case creates an automatic stay, and that attempts to collect a debt or other violations of the stay may subject the creditor to penalties. See Id. The Notice includes the Debtor's case number, and the names of the Judge and Trustee to whom the case was assigned. See Id.

[14] Docket Entry No. 20.

Case 2:06-bk-03692-SSC    Doc 49    Filed 07/09/07    Entered 07/09/07 08:41:39    Desc
Main Document    Page 5 of 17

contact Mr. Foshee by telephone, on several occasions, but was unable to reach him or anyone at the business.  By Friday, May 25, having received no further response from Mr. Foshee, and with the Debtor's vehicles still in the possession of Specialty Motors, the Debtor's counsel determined to file the instant Motion for Sanctions and request an expedited hearing thereon.  Ms. Paris received the hearing date and time later in the afternoon of May 25, but was again unable to reach Mr. Foshee or Specialty Motors by telephone or facsimile. The following Monday, May 28,  was a holiday, so early Tuesday morning, May 29, Ms. Paris attempted to fax the Motion and the notice of hearing documents to Specialty Motors.  When she was unable to reach Mr. Foshee by facsimile or telephone by May 31, she called the Debtor and requested that the Debtor hand-deliver the Motion and Notice of Hearing to Specialty Motors, whose office is directly behind the Bashas' store where the Debtor's son works.  The Debtor's son, Aaron White, hand-delivered the documents to an employee at Specialty Motors that day.  Mr. Foshee testified that he was not in the office at the time of delivery of the documents, but he reviewed them later that evening upon his return to the office.

Mr. Foshee did not disagree with or controvert Ms. Paris' testimony.  Rather, he simply testified that as a lender, he had previously received assurances from individuals that they had filed bankruptcy proceedings when they had not.  He further testified that he did not receive the Notice of the Debtor's bankruptcy and the Plan from Ms. Paris until later in the evening on May 23, but he did not review them until the weekend, and he did not call the Bankruptcy Court to verify whether the Debtor had filed a bankruptcy petition until Tuesday, May 29, because of the holiday weekend.  After receiving verification from the Bankruptcy Court that the Debtor had commenced the present case, he returned the vehicles to the Debtor later in the day on May 29, 2007.

The Debtor testified, at length, about the difficulty that she and her family encountered once both of the vehicles were repossessed.  She incurred attorneys' fees and costs to prosecute the stay violation.  Moreover, she was placed under significant stress,

6

immediately causing her to experience headaches which were enervating.  She stated that she was immediately placed on anti-seizure and other medication to alleviate her headaches, but as of the June 14 hearing, she was still experiencing severe headaches from the stress that she was under.  The Debtor also testified that she lived a substantial distance from the Courthouse and suffered from an anxiety disorder which was exacerbated when she was in crowds or a public setting.  She testified that she cared for a minor child during the day, and with no access to any vehicle, she was unclear what she would do in case of an emergency.  She was also extremely concerned that her adult daughter, who drove one of the vehicles that was repossessed and who provided income to the Debtor for the Debtor's support, would lose her job.  The Debtor testified that ultimately the daughter drove the vehicle of the Debtor's elderly disabled father to work, but such action resulted in further stress to the Debtor who became concerned about her father's lack of a vehicle for emergency purposes.  The Debtor seeks sanctions against Specialty Motors for the retention of the Debtor's vehicles from May 23 until the return of the vehicles on May 29.

### III. LEGAL DISCUSSION

**A.  The Creditor Violated the Debtor's Automatic Stay**

The filing of a petition for relief under the Bankruptcy Code operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3) (West 2007).  This automatic stay is intended to give the debtor some "breathing room" and the chance to effect a plan of reorganization or repayment.  Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams), 127 B.R. 239, 241 (9th Cir. B.A.P. 1991).  Although the stay automatically terminates after 30 days under certain circumstances, a debtor may avoid such termination by filing a motion for continuation of the stay, with notice to creditors and a hearing in the matter

7

Case 2:06-bk-03692-SSC    Doc 49    Filed 07/09/07    Entered 07/09/07 08:41:39    Desc
Main Document    Page 7 of 17

prior to the expiration of the 30-day stay.  Id. § 362(c).  The Court may then, in its discretion, continue the stay, as it did in this case.  See Id.

"[A]n individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees."  Id. § 362(k).  A willful violation of the stay occurs when 1.) a creditor had notice of the debtor's bankruptcy filing, and 2.)  the creditor's actions that violated the stay were intentional.  In re Bloom, 875 F.2d 224, 227 (Ninth Cir. 1989).  When a creditor lacks notice of a debtor's bankruptcy, acts in violation of the stay may be inadvertent; however, such acts become willful stay violations when the creditor learns of the debtor's bankruptcy but fails to take reasonable steps to remedy the violation.  Abrams, 127 B.R. at 243-44.[15]  The law imposes an "affirmative duty to remedy the automatic stay violation" when the creditor learns of the debtor's bankruptcy.  In re ZiLOG, Inc., 450 F.3d 996, 1009 (9th Cir. 2006); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1192 (9th Cir. 2003).  Failure to take immediate affirmative steps to remedy the stay violation creates a "willful" violation of the stay, for which Section 362(k) mandates that a Court  "shall" award actual damages.  California Employment Devel. Dept. v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147 (9th Cir. 1996).

The violation of the Debtor's automatic stay by Specialty Motors began inadvertently.  As noted, Mr. Foshee, its principal,  and Specialty Motors were not included on the Debtor's Master Mailing List, and did not receive notice of the filing of the Debtor's second bankruptcy case until May 23, 2007, after Specialty Motors had repossessed the Debtor's vehicles.  However, on May 23, Mr. Foshee received a telephone call from the offices of Debtor's counsel, immediately followed by the faxed copies of the Notice and the

---

**15**  Although Bloom, Abrams, and other cases cited in this Decision were decided prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23 ("BAPCPA"), BAPCPA did not substantively amend the portion of the statute mandating damages for stay violations.  The section at issue was retained verbatim, but was re-designated Subsection 362(k)(1), and a new subsection, not at issue here, was appended to it.  Thus, Bloom, Abrams, and other cases decided under Section 362(h) have precedential effect for purposes of this Decision. .

Plan, alerting Specialty Motors that the Debtor had a pending bankruptcy case. As of May 23, 2007, Specialty Motors had the affirmative duty to return the vehicles to the Debtor immediately, or it would be in willful violation of the automatic stay. However, Mr. Foshee and Specialty Motors intentionally did nothing. If Mr. Foshee doubted the authenticity of the Notice of Bankruptcy Case Filing and the Chapter 13 Plan that were faxed to him on May 23, he could have called the Court on May 23, or since he conceded that he had a computer and internet access, he could have accessed the Court's internet website to verify the filing of the Debtor's second bankruptcy case. Neither Mr. Foshee, or anyone else acting on behalf of Specialty Motors took any action until May 29.[16]

**B. The Damages To Be Awarded**

Because the Court finds that Specialty Motors willfully violated the Debtor's automatic stay, Section 362(k) requires that the Court award to the Debtor her actual damages. In re Ramirez, 183 B.R. 583 (9th Cir. B.A.P. 1995). The Debtor has requested that she be awarded her attorneys' fees and costs which she has incurred in this matter, as her actual damages, as well as $2,000 in emotional distress damages.[17]

The Ninth Circuit Bankruptcy Appellate Panel has stated that "actual damages" are not limited to a specific dollar amount, but should rather be a money judgment compensating the debtor for actual injury and harm suffered. In re Roman, 283 B.R. 1, 9 (9th Cir. B.A.P. 2002). Actual injury and harm include emotional distress suffered by a debtor,

---

**16** Mr. Foshee testified that he was often away from the Specialty Motors office during the week of May 23 and did not have the opportunity to review the items faxed to Specialty Motors until the evening of May 25. However, Ms. Paris testified that the Notice and the Plan were faxed and received by Specialty Motors on May 23. Either Mr. Foshee or some other individual acting on behalf of Specialty Motors received those documents on May 23. It then became incumbent on Specialty Motors to telephone the Bankruptcy Court or use the Court's website to verify the filing of the bankruptcy petition that same day.

**17** In her initial Motion, the Debtor requested punitive damages; however, after the vehicles were returned, the Debtor's counsel felt that such damages were no longer appropriate, and the request was withdrawn at the June 14 hearing.

and a Court may award emotional distress damages without requiring the debtor to present medical affidavits or receipts. However, all actual damages must be proven to have been suffered, and the Court must find a causal connection between the emotional harm and the stay violation. In re Dawson, 390 F.3d 1139, 1150-51 (9th Cir. 2004); Eskanos & Adler v. Leetien, 309 F.3d 1210 (9th Cir. 2002).

First, Section 363(k) and the case law clearly support the Debtor's request for attorneys' fees and costs because of the willful violation of the stay by Specialty Motors. Since Specialty Motors willfully violated the stay for the time period from May 23 until May 29, the Debtor is entitled to the attorneys' fees and costs that she incurred to file her Motion for Sanctions and for her counsel to attend the June 14 hearing thereon. The Court concludes that Specialty Motors did not have appropriate notice of the initial hearing on the Debtor's Motion for Sanctions, so counsel for the Debtor should exclude the time to attend that hearing from his request for fees.[18] The Court does require an affidavit from the Debtor's counsel to assess the actual damages that have been incurred by the Debtor.

The Debtor also requests the sum of $2,000 as a damage award for the emotional distress that she has suffered as a result of the improper actions of Specialty Motors. The repossession of the vehicles placed a significant strain on the Debtor, who cares for a minor child during the day. She testified that she was unclear what course of action she would take if an emergency occurred. The Debtor also testified that her adult daughter, who provided income to the Debtor, was experiencing difficulty in finding transportation to her job. Of course, the solution, to utilize the vehicle of the Debtor's elderly disabled father, provided the daughter with a means of transportation, but only heightened the stress of the Debtor as she was forced to confront how she would handle a medical emergency for her father. Moreover, given Mr. Foshee's testimony that he had known the Debtor's father for years, and he would have returned the vehicles immediately if he had known that Specialty Motors was violating the stay, it was unclear why Mr. Foshee continued to retain the vehicles

---

[18] See , note 2, supra.

10

from May 23 to May 29, when he could have simply telephoned the Debtor's father to verify that the Debtor had again filed a bankruptcy petition.  In essence, Mr. Foshee's actions, given his connection to the family, only seemed to heighten the Debtor's emotional distress.

    The Debtor testified that she suffers from recurring headaches that began when she discovered the vehicles had been repossessed.  She testified that she her doctor placed her on one or more medications, including one to prevent seizures, in an attempt to relieve the headaches.  However, as of the June 14 hearing, the Debtor testified that she still has recurring headaches as a result of stress.  Additionally, the Debtor suffers from an anxiety disorder, and the accompanying fear of public places and crowds, yet given the willful violation of the stay, the Debtor was forced to file and prosecute her Motion for Sanctions, including traveling a fairly long distance to attend a hearing on her Motion.  The Court concludes that the Debtor has shown, through ample evidence, that her emotional trauma, with its accompanying physical symptoms, were caused by Specialty Motor's ongoing refusal to return the vehicles to the Debtor.  The ongoing violation of the stay by Specialty Motors caused emotional distress to the Debtor.

    Mr. Foshee asserted that he, too, incurred damages in defending against the Debtor's Motion for Sanctions.  He lost earnings by appearing in Court on June 14, and incurred towing and other fees in returning the Debtor's vehicles to her.  He requests the Court offset any damages awarded to the Debtor by the damages that he and Specialty Motors incurred.  Mr. Foshee, however, was required to appear in Court as the principal or owner of Specialty Motors, which had willfully violated the stay through his actions.  Once Specialty Motors had notice of the Debtor's bankruptcy filing, it was incumbent on it, through its principal, Mr. Foshee, to take the necessary action to return the vehicles promptly to the Debtor.  To act otherwise was to proceed at their own risk.  Moreover, the case law does not reward a creditor for a willful violation of the stay by allowing that creditor to offset any damages that it may incur against the damages to be awarded to a debtor.  Even a creditor's good faith belief that it did not violate the debtor's stay is irrelevant to a Court's award of

11

compensation to a debtor.  In re Peralta, 317 B.R. 381, 389 (9th Cir. B.A.P. 2004); In re Goodman, 991 F.2d 613, 618 (9th Cir. 1993).  "Since the automatic stay is effective against the world, regardless of notice, acts in violation of the stay are automatically void ab initio." In re Peralta, 317 B.R. at 389, citing Schwartz v. United States, 954 F.2d 569, 572-74 (9th Cir. 1992).   The damages a creditor incurs in violating the stay cannot be assessed to a debtor, or the automatic stay would be meaningless.  In re Banderas, 236 B.R. 841 (Bankr.M.D.Fla. 1999).  Moreover, this Court must not issue a ruling that would be contrary to the policy behind the Bankruptcy Code, the effects of which would be inconsistent with the Bankruptcy Code provisions.  Id.; see In re Acequia, Inc., 34 F.3d 800, 808 (9th Cir. 1994). In this case, Specialty Motors willfully violated the stay from May 23 until May 29.  Such an ongoing violation of the stay does not warrant any offset of damages that Specialty Motors or Mr. Foshee may have incurred.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that Jack Foshee and Specialty Motors willfully violated the Debtor's automatic stay by failing to return her vehicles once Mr. Foshee received notice of the Debtor's bankruptcy filing.  The Debtor is entitled to recover the actual damages, including emotional distress, caused by the stay violation in the amount of $2,000 plus attorneys' fees and costs.[19]  The Court will execute a separate order incorporating this Memorandum Decision.

---

[19] As noted above, such fees and costs must exclude fees incurred for the May 31 hearing.

**DATED this 9th day of July, 2007.**

*/s/ Sarah Sharer Curley*

**Honorable Sarah Sharer Curley
United States Bankruptcy Judge**

BNC to Notice.

13

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | **<u>Exhibit 1</u>** |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

5,2007 11:49A    000-000-00000    page 1

ATTn: Lisa or Hal

Kim,
Never heard from you or Ally, until yesterday. Letter saying you filed for bankruptcy. Sorry to hear that, but sometimes it happens.
That takes care of your car, but what about Alison's? I need to know ASAP for the tax year and audit

Thx
[signature]

Oh, and your balance is 1,745.¹³, not 1425.ºº.

For: Kim White

Etc. X

**EXHIBIT 2**

CM/ECF • Bankruptcy • Adversary • Query • Reports • Utilities • Logout ?

United States Bankruptcy Court
District of Arizona

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy Code, entered on 11/06/2006 at 1:50 PM and filed on 11/06/2006.

FILED Electronically 11/06/2006 1:50 PM

KIM MARIE WHITE
P.O. BOX 117
TAYLOR, AZ 85939
SSN: xxx-xx-0837

The case was filed by the debtor's attorney:

**HAROLD 2 CAMPBELL**
HAROLD E. CAMPBELL, PC
1811 S. ALMA SCHOOL RD. STE. 225
MESA, AZ 85210
480-839-4828

The bankruptcy trustee is:

**RUSSELL A. BROWN**
CHAPTER 13 TRUSTEE
P.O. BOX 33970
PHOENIX, AZ 85067-3970
602-277-8996

Exhibit: 2
Case: 06-3692
Date: 6-14-07

The case was assigned case number 2:06-bk-03692-SSC to Judge Sarah Sharer Curley.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

17